Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JOSÉ ORTIZ COSME<br><br>Peticionario<br><br>V.<br><br>XAVIANA MOLINA FONSECA<br><br>Recurrida | KLCE202301084 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores, Bayamón<br><br>Caso Núm.: BY2019RF01023 (3001)<br><br>Sobre: ALIMENTOS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

El peticionario, José Ortiz Cosme, solicita que revisemos la resolución en la que el Tribunal de Primera Instancia le ordenó pagar treinta y un mil seiscientos veinticinco dólares ($31,625.00) por gastos del litigio y mil dólares ($1,000.00) de honorarios.

La recurrida, Xaviana Molina Fonseca, solicitó la desestimación del recurso, porque no fue notificada conforme a derecho. La desestimación no procede. El recurso se notificó correctamente a su abogada, la Lcda. Leticia Maldonado, por correo electrónico, conforme a la Regla 48 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 48.

El 13 de octubre de 2023, la recurrida presentó su alegato en oposición al recurso.

Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

**I**

El 17 de diciembre de 2016, las partes acordaron extrajudicialmente el pago de una pensión alimentaria para beneficio de su hija menor de edad. Ambos acordaron que el peticionario pagaría

$50.00 semanales por concepto de hogar seguro y doscientos dólares ($200.00) semanales de pensión alimentaria para un pago total de $250.00 semanales. El padre se responsabilizó por los gastos médicos de la menor, debido a que la madre pagaba el plan médico. Véase, pág. 24 del apéndice de la oposición.

El 2 de diciembre de 2019, el peticionario solicitó al TPI que estableciera la pensión conforme a la ley, porque en los meses de cinco semanas, el pago era mayor a lo acordado. Véase, pág. 22 del apéndice de la oposición.

El 19 de diciembre de 2019 se estableció una pensión provisional de $800.00 mensuales y el pago del 54.5 % de los gastos médicos no cubiertos por el plan de salud. El 22 de diciembre de 2021 se estableció una pensión provisional de $568.02 mensuales y el pago del 54% de los gastos médicos no cubiertos por el plan de salud y los gastos extraordinarios. El TPI también tuvo que ordenarle al peticionario que recibiera los documentos relacionados al descubrimiento de prueba.

La peticionaria envió el descubrimiento de prueba al peticionario el 28 de enero de 2020 y el 11 de agosto de 2021. El peticionario contestó el interrogatorio el 11 de julio de 2022. Sin embargo, no produjo los documentos solicitados. La recurrida alegó que respondió con evasivas y anejó las respuestas como evidencia. El TPI tomó conocimiento de lo informado y ordenó al peticionario cumplir con el descubrimiento de prueba reiteradamente.

El 11 de julio de 2022, el peticionario estipuló la existencia de una deuda por los gastos incurridos desde el 2019 a mayo de 2022. El peticionario se comprometió a pagar una deuda de $4,266.76 en cuatro pagos mensuales de $1,066.69. Véase, Anejos XXVII y XXVIII del apéndice del recurso.

El 13 de julio de 2022, la EPA concedió 10 días al peticionario para informar si iba a asumir capacidad económica. El peticionario insistió en que necesitaba los estados bancarios de la recurrida, lo cual

ya había sido resuelto el 16 de mayo de 2022. Los diez días transcurrieron sin que el peticionario aceptara capacidad económica. La recurrida pidió que el peticionario cumpliera con el descubrimiento y entregara los estados bancarios de los años 2017 y 2018. El peticionario alegó que el descubrimiento de prueba era prematuro, porque no sabía si asumiría la capacidad económica. El TPI denegó su solicitud. El peticionario pidió reconsideración y le fue denegada.

El 4 de agosto de 2022, la recurrida pidió que la Corporación JJ Parts and Services certificara información de los ingresos y beneficios económicos que recibe el peticionario como accionista. El peticionario se opuso. El TPI denegó el descubrimiento de prueba sobre la corporación. La recurrida solicitó reconsideración. El peticionario se opuso.

El 6 de septiembre de 2022, el tribunal reiteró que no expediría órdenes contra las corporaciones aludidas y ese día, el peticionario informó, por primera vez, que no asumiría capacidad económica. El 16 de septiembre de 2022, la recurrida pidió la transferencia de la vista del 23 de septiembre de 2022. La señora Molina Fonseca alegó que no tenía tiempo suficiente para prepararse, porque el peticionario informó el 6 de septiembre de 2022 que no iba a aceptar capacidad económica. Su representación legal argumentó que el peticionario tampoco había cooperado con el descubrimiento de prueba.

El 21 de septiembre de 2022, el TPI notificó que autorizó reabrir el descubrimiento de prueba, debido a que el peticionario no aceptó capacidad económica. El 22 de septiembre de 2022, la recurrida envió el descubrimiento de prueba al peticionario.

El peticionario solicitó reconsideración de la orden de reabrir el descubrimiento de prueba. El tribunal declaró No Ha Lugar la reconsideración. El peticionario acudió al Tribunal de Apelaciones en el recurso KLCE202201203. El 9 de noviembre de 2022, este tribunal denegó el recurso. No obstante, el TPI se enteró de la presentación del

recurso apelativo ese mismo día porque el peticionario no notificó al foro recurrido el recurso adecuadamente.

El TPI realizó una vista de status el 9 de noviembre de 2022. La recurrida pidió el pago de honorarios por temeridad y litis expensas. La señora Molina alegó que el patrón de incumplimiento del peticionario ocasionó dilaciones innecesarias e irrazonables. El foro primario concluyó que el peticionario no justificó sus actos e incumplimientos y le ordenó contestar el descubrimiento de prueba. Por último, concedió un término final de quince (15) días para finalizar el descubrimiento de prueba.

El peticionario pidió descubrir prueba expirado dicho plazo y la solicitud le fue denegada. El 29 de noviembre de 2022 contestó el interrogatorio. La recurrida objetó sus contestaciones. El TPI, nuevamente, ordenó al peticionario cumplir con el descubrimiento de prueba.

El 7 de diciembre de 2022, el TPI ordenó al peticionario a pagar dos mil dólares ($2,000.00) de honorarios por temeridad y tres mil dólares ($3,000.00) de litis expensas. El foro primario concluyó que el peticionario incumplió reiteradamente con el descubrimiento de prueba, que su comportamiento provocó una dilación innecesaria y que la recurrida tuviera que realizar esfuerzos excesivos. Según el tribunal, su incumplimiento vulneró el mejor bienestar de la menor que tiene varios diagnósticos de salud que han sido evidenciados. Véase, pág. 40 del apéndice de la oposición.

El 4 de agosto de 2023, el TPI realizó una vista evidenciaria sobre los gastos del litigio. La señora Molina dio su testimonio y presentó prueba documental. El TPI analizó la prueba y ordenó al peticionario a pagar treinta y un mil seiscientos veinticinco dólares ($31,625.00) por los gastos del litigio y mil dólares ($1,000.00) de honorarios de abogado por la vista evidenciaria.

Según consta en la resolución recurrida, la señora Molina Fonseca intentó contratar los servicios de Servicios Legales, pero las oficinas estaban cerradas por el periodo navideño. Por esa razón, pidió por escrito la transferencia de la vista. El peticionario se opuso. El TPI le ordenó a la recurrida que contratara representación legal. La recurrida contrató los servicios de la Lcda. Chrisired Morales, que la representó a partir del mes de diciembre de 2019 hasta mayo 2020. La Lcda. Morales envió Primer Pliego de Interrogatorio y Requerimiento de Admisiones en el mes de enero de 2020. El peticionario nunca contestó, a pesar del sinnúmero de gestiones extrajudiciales realizadas para evitar gastos legales. La conducta del peticionario ocasionó la necesidad de la intervención judicial para que cumpliera con lo requerido. La Lcda. Morales tuvo que solicitar extrajudicialmente al peticionario el pago de la pensión provisional. El peticionario no cumplió con el pago de la pensión. Su incumplimiento obligó a la Lcda. Morales a litigar en el tribunal el pago de la pensión. Posteriormente, la Lcda. Morales renunció por asuntos personales relacionados a su familia.

El TPI determinó que los gastos del litigio durante la representación de la Lcda. Morales ascendieron a $2,049.00, debido a que el peticionario incumplió con el descubrimiento de prueba y con el pago de la pensión provisional. El foro primario concluyó que su comportamiento generó la litigación de la representación legal de la recurrida y la intervención judicial.

Entonces, la Lcda. Michelle Acosta de la Sociedad de Servicios Legales de Puerto Rico asumió la representación legal de la recurrida a partir del 5 de noviembre de 2020 hasta el 24 de enero de 2022. En cuanto a esta, el TPI concluyó que la Lcda. Acosta tuvo que presentar múltiples escritos para que el peticionario concluyera con las gestiones que realizó la Lcda. Morales y para que cumpliera con el descubrimiento de prueba y con el pago de la pensión provisional. Según el TPI, la Lcda. Acosta también tuvo que acudir al tribunal

porque el peticionario continuó su reiterado incumplimiento con el descubrimiento de prueba y el pago de la pensión. El foro primario determinó que el peticionario: (1) se negó a recibir el descubrimiento de prueba y ocasionó que la recurrida tuviera que pagar ciento cincuenta ($150.00) dólares a un mensajero para que se lo entregara, (2) generó litigación porque informó que estaba considerando asumir capacidad económica y nada adujo al respecto, y (3) ocasionó que Servicios Legales solicitara el relevo de la representación legal, por lo contencioso de la litigación y a que, sus múltiples mociones, limitaban el tiempo de la Lcda. Acosta para atender otros casos.

El TPI concluyó que la señora Molina se vio obligada a representarse por derecho propio, porque los programas de representación legal gratuita declinaron hacerlo, por lo contencioso del caso. El foro primario determinó que la recurrida hizo múltiples gestiones para finiquitar los asuntos y evitar litigaciones extensas e innecesarias. Sin embargo, el peticionario se opuso a que se representara por derecho propio e insistió en que tenía que asistir con abogado.

Posteriormente la representación legal de la señora Molina Fonseca fue asumida por la licenciada Mariana Bula Mulero. Según el TPI, luego de largas búsquedas, la recurrida solo logró que la Lcda. Bula la representara. La recurrida fue representada por la Lcda. Bula a partir del 2 de mayo de 2022 a enero 2023. El TPI concluyó que la señora Molina Fonseca presentó facturas que evidenciaron que los honorarios de la Lcda. Bula Mulero ascendieron a $26,926.00. El foro primario responsabilizó al peticionario por el gasto. Según el TPI, su continuo incumplimiento con el pago de la pensión ocasionó la celebración de vistas y la presentación de escritos. El TPI hizo referencia a que el 11 de julio de 2022, el peticionario se allanó a la existencia de una deuda de $4,266.76. y acordó un plan de pago. No obstante, incumplió con el plan pago y posteriormente, se retractó a pesar de que

lo estipuló en corte. El foro primario resolvió que la conducta del peticionario generó la necesidad de litigación y de gastos innecesarios y que la recurrida solicitara sanciones. Sin embargo, continuó el patrón de incumplimiento reiterado con el pago de la pensión y el descubrimiento de prueba.

El TPI, además, encontró justificados los honorarios de la Lcda. Bula, porque el peticionario solicitó que la menor asistiera a la escuela presencialmente y eso ocasionó varias vistas y un sinnúmero de intervenciones del tribunal. El foro primario responsabilizó al peticionario porque la menor perdió el cupo en el Colegio Otoqui que él mismo seleccionó. El tribunal atribuyó la pérdida de cupo, a que el peticionario no pagó la matrícula a tiempo. Según el TPI, su incumplimiento generó nuevas intervenciones y vistas judiciales para que la menor pudiera estudiar en otro colegio. Además, de la presentación de escritos y el gasto de honorarios. Por último, el tribunal determinó que la renuncia de la Lcda. Bula, respondía a que la señora Molina Fonseca no podía pagar sus servicios.

La recurrida comenzó a representarse nuevamente por derecho propio. Nuevamente, el peticionario se opuso a que se representara por derecho propio. Según el TPI, en marzo de 2023, la recurrida tuvo que contratar a la Lcda. Leticia Maldonado Ruiz y ha sido su abogada hasta el presente. El foro primario concluyó que la recurrida evidenció que ha gastado $2,500.00 durante la representación de la Lcda. Maldonado. El TPI atribuyó esos gastos a que el peticionario continuó incumpliendo con el descubrimiento de prueba y el pago de la pensión. Además, determinó de que la Lcda. Maldonado tuvo que darle seguimiento a las órdenes que la recurrida solicitó por derecho propio y litigar nuevamente los asuntos del colegio. Según el foro primario, la menor permaneció en el año escolar 2023-2024 en el Colegio Gedalis, luego de sus objeciones infundadas y peticiones de prórrogas.

El foro recurrido concluyó que el peticionario debía pagar treinta y un mil seiscientos veinticinco dólares ($31,625.00) y mil dólares ($1,000.00) de honorarios, debido a que, todas las gestiones extrajudiciales de la recurrida y sus abogados para minimizar las controversias y evitar gastos innecesarios, fueron infructuosas. Además, responsabilizó al peticionario porque su conducta obligó a la recurrida a hacer préstamos para costear el litigio. El TPI concluyó que la conducta del peticionario causó el endeudamiento y la pobreza de la madre y ese asunto repercute y perjudica directamente el bienestar de la menor.

El peticionario pidió reconsideración. El 1 de septiembre de 2023, el TPI declaró NO HA LUGAR la reconsideración.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER AL PETICIONARIO LA SUMA EXCESIVA E IRRAZONABLE DE $31,625.00 DÓLARES POR CONCEPTO DE GASTOS DEL LITIGIO Y $1,000.00 DÓLARES EN CONCEPTO DE HONORARIOS DE ABOGADO POR LA CELEBRACIÓN DE LA VISTA EVIDENCIARIA, NO ESTANDO EN POSICIÓN ECONÓMICA EL PETICIONARIO PARA CUBRIR TAL CANTIDAD, SIN LA RECURRIDA PRESENTAR PRUEBA DOCUMENTAL CON VALOR PROBATORIO Y TENIENDO EL PETICIONARIO GASTOS DE LITIGIO PROPIOS QUE COSTEAR, SIENDO LA CANTIDAD IMPUESTA EXCESIVA Y HABIENDO EL PETICIONARIO ORIGINADO LA ACCIÓN QUE NO HA CULMINADO.

## II

### A

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. 32 LPRA sec. 3491; *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de Leon Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174 (2020); *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta, está sujeta a los criterios

señalados en la Regla 52.1 de Procedimiento Civil. Advertimos que esta regla ha sufrido modificaciones a través del tiempo para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso.

En la actualidad, la Regla 52.1 de Procedimiento Civil específicamente dispone que el recurso de certiorari solamente será expedido:

> … para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.
>
> Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V, R. 52.1.

Superado el análisis al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* el foro apelativo deberá auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para guiar su discreción al intervenir con la resolución u orden interlocutoria recurrida. La Regla 40 dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ha de quedar claro que la denegatoria a expedir un recurso de certiorari no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Sino que responde al ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

**B.**

El Tribunal Supremo de Puerto Rico estableció en *Pueblo v. Rivera Santiago,* 176 DPR 559, 580-581 (2009), las guías para determinar cuándo un tribunal abusa de su discreción. El abuso de discreción se constituye cuando el juez: (1) no toma en cuenta e ignora sin fundamento un hecho material importante que no podía pasar por alto, (2) sin justificación ni fundamento alguno concede gran peso y valor en un hecho irrelevante e inmaterial y su decisión se basa exclusivamente en el mismo, (3) aunque considera y toma en cuenta todos los hechos materiales importantes y descarta los irrelevantes, los sopesa y calibra livianamente.

La Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, autoriza a los tribunales a imponer costas interlocutorias y sanciones económicas a las partes o a su representación legal, en todo caso y en cualquier etapa. No obstante, las costas y sanciones interlocutorias solo procederán cuando la parte a ser sancionada o su representación legal

han incurrido en demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia.

La imposición de sanciones al amparo de la Regla 44.2, *supra,* está sujeta a la sana discreción del tribunal. Esta regla agiliza los procedimientos y evita la demora y congestión en los tribunales. El tribunal puede sancionar por iniciativa propia a una parte cuya conducta perjudica la eficiente administración de la justicia. *División de Empleados Públicos de la Unión General de Trabajadores v. Cuerpo de Emergencias Médicas,* 2023 TSPR 107.

Los tribunales pueden imponer costas interlocutorias a favor de una parte para reembolsar un gasto extraordinario innecesario en el que tuvo que incurrir a causa de otra parte. Además, pueden imponer sanciones económicas interlocutorias. *Pérez Torres v. Academia Perpetuo Socorro,* 182 DPR 1016, 1026-1027 (2011).

La temeridad es un concepto amplio que incluye las actuaciones de un litigante que ocasionan un pleito que pudo evitarse, que provocan la prolongación indebida del trámite judicial u obligan a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso es temerario cuando por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito. Una parte es claramente temeraria cuando insiste contumazmente en alegar algo, sin alguna prueba fehaciente que lo apoye, niega los hechos que le constan o son de fácil corroboración y dilata los procedimientos judiciales para no responder por sus obligaciones. *SLG González Figueroa v. SLG et al,* 209 DPR 138, 148-149 (2022).

El abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a su cliente. Nuestro ordenamiento jurídico ha adoptado la máxima legal *quantum meruit* que significa tanto como

se merece. A su amparo, los abogados tienen derecho a reclamar el valor razonable de los servicios prestados. *In re Franco Rivera,* 169 DPR 237, 266-267 (2006). Tan reciente como en *Ortiz Valle v. Panadería Ricomini,* 210 DPR 831, 840 (2022), utilizó el criterio de la razonabilidad al momento de evaluar una petición de honorarios de abogado y reconoció la discreción del tribunal para aceptar o modificar la cuantía solicitada.

El criterio de la razonabilidad está presente en el Art. 656 del Código Civil vigente, 31 LPRA sec. 7534, aplicable cuando el alimentista se ve compelido a acudir al tribunal o a iniciar un proceso administrativo para reclamar su derecho a los alimentos. La cuantía impuesta incluirá una partida razonable para sufragar los gastos del litigio y los honorarios de abogado.

La fijación de los honorarios de abogado está regulada en el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24. Al momento de determinar su cuantía deben considerarse los factores siguientes:

(1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso.

(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes.

(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares.

(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado.

(5) la contingencia o certeza de la compensación, y

(6) La naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

**III**

La Regla 52.1, *supra,* autoriza nuestra intervención en un pleito de relaciones de familia, como el que está ante nuestra consideración. Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* nos faculta a intervenir para evitar dilaciones innecesarias en un caso de alimentos de menores que comenzó hace casi cinco años.

El peticionario cuestiona que el TPI le ordenó pagar treinta y un mil seiscientos veinticinco dólares ($31,625.00) por los gastos del litigio y mil dólares ($1,000.00) de honorarios por obligar al tribunal a realizar una vista evidenciaria.

La temeridad del peticionario está establecida. Así lo confirmamos en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) y en el recuento procesal que hizo el TPI en la resolución dictada el 7 de diciembre de 2022.[1] Luego de hacer dicho recuento, el TPI ordenó al peticionario el pago de honorarios por temeridad y tres mil dólares ($3,000.00) de litis expensas. Sin embargo, el peticionario continuó con la conducta sancionada.

La inacción, demora y falta de diligencia del peticionario en cumplir con las órdenes del tribunal obligó a la recurrida a incurrir en gastos innecesarios y ha obrado en perjuicio de la eficiente administración de la justicia. La conducta temeraria del peticionario tiene aún más relevancia en un caso de alimentos de menores, debido a su alto interés público. Al igual que el TPI, concluimos que el peticionario tiene que pagar las costas interlocutorias que establece la Regla 44.2, *supra.* Sin embargo, no estamos de acuerdo con la cantidad que el foro primario le ordenó pagar. La regla citada no es una puerta

---

[1] A nuestro juicio, es importante señalar que advinimos en conocimiento de muchos de los hechos procesales ocurridos en el TPI a través de SUMAC, debido a que el peticionario no proveyó todas las mociones y escritos pertinentes para la solución de la controversia. No obstante, en nuestro empeño de cumplir con la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, que salvaguarda los derechos de acceso a los tribunales, la solución justa, rápida y económica de todo procedimiento, obtuvimos conocimiento del expediente del TPI y de los documentos esenciales para atender y resolver este recurso, mediante el expediente digital de SUMAC.

abierta para el reembolso de cualquier cantidad reclamada. Los gastos del litigio tienen que ser razonables.

A nuestro juicio, el TPI abusó de su discreción. La cantidad de treinta y un mil seiscientos veinticinco dólares ($31,625.00) es exagerada e irrazonable.

La controversia se circunscribe a determinar cuáles son los gastos extraordinarios innecesarios, que se vio obligada a pagar la recurrida por la conducta del peticionario. El criterio que rige el análisis de la controversia es la razonabilidad.

El TPI responsabilizó al peticionario de la renuncia de la representación legal gratuita de la Sociedad de Servicios Legales de Puerto Rico. El foro primario concluyó que la Lcda. Michelle M. Acosta Rodríguez renunció, debido a la complejidad de la litigación y a las múltiples mociones que presentó el peticionario. Sin embargo, no existe ninguna evidencia para pensar ni concluir que el peticionario fue responsable de su renuncia. La conclusión del TPI es incorrecta, porque la Lcda. Acosta Rodríguez informó al TPI que su renuncia obedecía a la existencia de diferencias irreconciliables de criterios con la señora Molina Fonseca. Este hecho consta en la *Moción urgente solicitando relevo de representación legal* que presentó la Lcda. Acosta el 24 de enero de 2022. Véase, pág. 118 del apéndice.

La señora Molina Fonseca declaró que desconocía que podía solicitar al tribunal abogado libre de costo. Sin embargo, admitió que se le ofreció servicios pro-bono y que los solicitó. La testigo también reconoció que el TPI le indicó que solicitara los servicios de Servicios Legales. Véase, págs. 616, 617, 668-669 de la Transcripción. La señora Molina Fonseca conocía que podía contratar un abogado de forma gratuita, porque a inicios del pleito gestionó ser representada por la Sociedad de Servicios Legales. Además de que, del 5 de noviembre de 2020 al 24 de enero de 2022, su representación estuvo a cargo de Servicios Legales de Puerto Rico.

El TPI ordenó al peticionario reembolsar a la recurrida $26,926.00 por los honorarios de la Lcda. Bula Mulero. El foro primario concluyó que los honorarios de la Lcda. Bula constituyen un gasto extraordinario innecesario en el que la recurrida incurrió a causa del peticionario. La recurrida admitió que sabía que los honorarios eran significativos, pero contrató su representación legal, porque pensó que el caso iba a acabar rápido. La señora Molina Fonseca aceptó que los abogados le informaron desde el principio sus honorarios. Fue clara en que los abogados le dijeron que iban a cobrar X cantidad. Véase, págs. 663-664 de la Transcripción.

A nuestro juicio la cantidad de $26,926.00 es irrazonable, debido a que la Lcda. Bula representó a la recurrida por aproximadamente ocho meses. Su representación comenzó el 2 de mayo de 2022 y se extendió hasta el mes de enero 2023. Los gastos durante la representación de la Lcda. Bula son desproporcionales con los cobrados durante las representaciones de las Licenciadas Chrisired Morales y Leticia Maldonado Ruiz. La Lcda. Morales facturó $2,049.00, por aproximadamente seis meses. Por su parte la Lcda. Leticia Maldonado Ruiz cobró $2,500.00 por aproximadamente seis meses. Las Licenciadas Morales y Maldonado al igual que la Lcda. Bula hicieron gestiones relacionadas al incumplimiento del peticionario con el pago de la pensión alimentaria y el descubrimiento de prueba.

Por último, la recurrida no pudo establecer la cuantía de los gastos extraordinarios innecesarios en los que tuvo que incurrir a causa del peticionario. La señora Molina Fonseca declaró que pidió dinero prestado a sus familiares para pagar los gastos del litigio. Sin embargo, no existe constancia del dinero que alegó recibió de sus familiares. La recurrida tampoco pudo contestar ni evidenciar cuánto dinero le prestaron ni para qué lo utilizó. Véase, págs. 629-634 y 673 de la Transcripción. Aunque dijo que su madre hizo un préstamo

bancario para ayudarle con los gastos del litigio, no presentó evidencia del mismo. Véase, pág. 633 de la Transcripción.

**IV**

Por lo antes expuesto, se expide el auto, se confirma la obligación del peticionario de pagar los gastos del litigio y honorarios, pero se revoca la cantidad impuesta y se devuelve el caso al Tribunal de Primera Instancia para que imponga una cantidad razonable al margen de los criterios establecidos en el Canon 24 del Código de Ética Profesional.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones